1  STEPHEN S. HASEGAWA (SBN 198472)
   shasegawa@phillipsandcohen.com
2  PHILLIPS & COHEN LLP
   100 The Embarcadero, Suite 300
3  San Francisco, CA 94105
   Tel: (415) 836-9000
4  Fax: (415) 836-9001

5  JOHN W. TREMBLAY (SBN 307163)
   jtremblay@phillipsandcohen.com
6  PHILLIPS & COHEN LLP
   2000 Massachusetts Ave., NW
7  Washington, DC 20036
   Tel: (202) 833-4567
8  Fax: (202) 833-1815
   Attorneys for *Qui Tam* Plaintiff
9

FILED

MAY 30 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

10          **UNITED STATES DISTRICT COURT**
        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11

12  [UNDER SEAL],                          CV 19   Civil Action No.   2991

13                        Plaintiffs,

14                                          **COMPLAINT**

     - against -
15
                                           **FILED IN CAMERA AND UNDER**
16  [UNDER SEAL],                          **SEAL PURSUANT TO 31 U.S.C. §**
                                           **3730(b)(2)**
17                       Defendants.

18                                          **JURY TRIAL DEMANDED**

19                 DOCUMENT TO BE KEPT UNDER SEAL

20                   DO NOT ENTER INTO PACER

21

22

23

24

25

26

27

28

                        COMPLAINT

594459.1

1  STEPHEN S. HASEGAWA (SBN 198472)
   shasegawa@phillipsandcohen.com
2  PHILLIPS & COHEN LLP
   100 The Embarcadero, Suite 300
3  San Francisco, CA 94105
   Tel: (415) 836-9000
4  Fax: (415) 836-9001

5  JOHN W. TREMBLAY (SBN 307163)
   jtremblay@phillipsandcohen.com
6  PHILLIPS & COHEN LLP
   2000 Massachusetts Ave., NW
7  Washington, DC 20036
   Tel: (202) 833-4567
8  Fax: (202) 833-1815
   Attorneys for *Qui Tam* Plaintiff
9

10  **UNITED STATES DISTRICT COURT**
    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12  UNITED STATES OF AMERICA and the         Civil Action No. _____
    STATES OF CALIFORNIA, COLORADO,
13  CONNECTICUT, DELAWARE, FLORIDA,          **COMPLAINT**
    GEORGIA, HAWAII, ILLINOIS, INDIANA,
14  IOWA, LOUISIANA, MARYLAND,
    MASSACHUSETTS, MICHIGAN,                 **FILED IN CAMERA AND UNDER**
15  MINNESOTA, NEVADA, NEW JERSEY, NEW       **SEAL PURSUANT TO 31 U.S.C. §**
    MEXICO, NEW YORK, NORTH CAROLINA,        **3730(b)(2)**
16  OKLAHOMA, RHODE ISLAND, TENNESSEE,
    TEXAS, VERMONT, VIRGINIA, and
17  WASHINGTON, and the DISTRICT OF          **JURY TRIAL DEMANDED**
    COLUMBIA, *ex rel*. ROBERT JAGIELSKI,
18

19          Plaintiffs,

20          - against -

21
    APRIA HEALTHCARE GROUP, INC.; APRIA
22  HEALTHCARE LLC; and DIGNITY HEALTH,

23          Defendants.

24

25

26

27

28

594459.1

*Qui Tam* Plaintiff and Relator Robert Jagielski ("Relator"), through his attorneys Phillips & Cohen LLP, on behalf of the United States of America and the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, and Washington, and the District of Columbia (the real parties in interest other than the United States are referred to herein collectively as "the States"), for his Complaint against Apria Healthcare Group, Inc., Apria Healthcare LLC, and Dignity Health ("Defendants"), alleges, based upon personal knowledge, relevant documents, and information and belief, as follows:

## I.   **INTRODUCTION**

1.      This is an action to recover damages and civil penalties on behalf of the United States of America and the States arising from false and/or fraudulent statements, records, and claims made and caused to be made by Defendants and/or their agents, employees, and co-conspirators in violation of the federal False Claims Act, 31 U.S.C. §§ 3729 – 3733 ("the Act" or "FCA"), the federal Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), and analogous laws of the States.

2.      Apria Healthcare Group, Inc., provides durable medical equipment ("DME") and related services, including supplies and equipment for home respiratory therapy, negative pressure wound therapy, home enteral nutrition therapy (tube feeding) and support from more than 300 locations throughout the United States through its wholly owned subsidiary, defendant Apria Healthcare LLC.

3.      Defendant Dignity Health ("Dignity") is a multi-state non-profit network that owns or operates 41 acute care hospitals and over 400 care centers in Arizona, California, and Nevada.

4.      Apria's business is largely dependent upon referrals from hospitals for DME and related services to be provided by patients after they are discharged from those hospitals. As an inducement for hospitals to refer insured (including government-insured) patients to Apria for the purchase or lease of Apria's goods and services, Apria provided, and continues to provide,

-1-
COMPLAINT

1   those hospitals' uninsured patients—including patients discharged by Dignity hospitals—with
2   post-discharge DME and related services at no cost to uninsured patients and at significant
3   discounts to the hospitals. The hospitals, including those owned by Dignity, would otherwise
4   have to pay full price for post-discharge DME for those uninsured patients. The provision of
5   DME at discounted rates is therefore a significant financial benefit to Dignity hospitals.

6        5.     To effectuate this *quid pro quo* arrangement, Apria and many of its customer
7   hospitals, including hospitals owned by Dignity, signed Preferred Vendor Agreements. Under
8   those agreements, the signatory hospitals agreed to refer to Apria all patients who required the
9   goods and services that Apria offers, subject to the patient's right to decline the referral. In most
10  cases, those patients' insurers—including government health programs—would pay Apria the
11  full price for Apria's goods and services set by the relevant government program or negotiated
12  by the insurers. In exchange for the hospital's referrals, Apria agreed to sell the hospitals, at
13  discounted rates, DME to be used by uninsured patients, for which the hospitals would otherwise
14  pay higher prices. In short, Apria provides a straightforward financial benefit to customer
15  hospitals, including Dignity hospitals, in exchange for those hospitals' agreement to refer all
16  their patients, including government-insured and other insured patients, to Apria. This
17  arrangement violates the AKS, the FCA, and analogous state statutes.

18       6.     Independent of Apria's provision of disguised discounts to hospitals in exchange
19  for referrals, Dignity provides customized billing software modifications to health care providers
20  to induce the providers to refer patients to Dignity. The modifications consist of electronic
21  interfaces, created at substantial cost to Dignity, that referring providers can use for billing
22  purposes. The software is not for the transmission of electronic health records and does not fall
23  within any "safe harbor" for electronic health records systems.

24       7.     At all relevant times, Defendants have known that providing or receiving anything
25  of value to induce the referral of business to health care vendors or providers violates the AKS,
26  which is intended to ensure that health care providers make clinical decisions based on informed,
27  impartial medical judgment, not their own financial self-interest. By influencing other health
28  care providers' referrals with valuable kickbacks, Defendants knowingly and routinely violated

594459.1

1  this fundamental principle, corrupting health care providers' medical judgment, increasing costs

2  to federal health care programs and beneficiaries, and promoting unfair competition.

3      8.    All claims that Apria and Dignity submitted to government health care programs

4  in connection with these kickback schemes are ineligible for reimbursement by Medicare,

5  Medicaid, and other federal and state-funded health care programs.  Apria and Dignity have

6  submitted, or caused to be submitted, such kickback-tainted claims.  Consequently, Defendants

7  have damaged the United States and the States in a significant amount.

8      9.    Defendants' conduct alleged in this Complaint violates the federal False Claims

9  Act.  The FCA originally was enacted during the Civil War.  In the 1980s, Congress found that

10  fraud in federal programs was pervasive and that the FCA, which Congress characterized as the

11  primary tool for combating government fraud, was in need of modernization.  Accordingly,

12  Congress substantially amended the Act in 1986 and in subsequent years to enhance the ability

13  of the United States government to recover losses sustained due to fraud against it.  Congress

14  intended the amendments to create incentives for individuals with knowledge of fraud against the

15  government to disclose the information without fear of reprisals or government inaction, and to

16  encourage the private bar to commit legal resources to prosecuting fraud on the government's

17  behalf.

18      10.    The FCA prohibits, among other things: (a) knowingly presenting, or causing to

19  be presented, to the federal government a false or fraudulent claim for payment or approval; (b)

20  knowingly making or using, or causing to be made or used, a false or fraudulent record or

21  statement material to a false or fraudulent claim; and (c) conspiring to commit violations of the

22  previous two provisions. 31 U.S.C. § 3729(a)(1)(A)–(C).  Any person who violates the FCA is

23  liable for a civil penalty of up to $22,363, as adjusted by the Federal Civil Penalties Inflation

24  Adjustment Act of 1990, for each violation, plus three times the amount of the damages the

25  United States sustains. *Id.* § 3729(a)(1).  Claims for payment resulting from violations of the

26  AKS are "false claims" under the FCA. 42 U.S.C. § 1320a-7b(g).

27      11.    The FCA allows any person having information about an FCA violation to bring

28  an action on behalf of the United States and to share in any recovery.  The FCA requires the

594459.1

1  Complaint to be filed under seal for a minimum of 60 days (without service on the defendant

2  during that time) to allow the government time to conduct its own investigation and to determine

3  whether to join the suit.

4      12.    Defendants' actions alleged in this Complaint also violate the laws of the States,

5  each of which has enacted a false claims act analogous to the federal FCA, each of requires

6  compliance with the AKS as a condition of payment for Medicaid reimbursement for the goods,

7  supplies, and services that Defendants provided, and many of which have their own analogous

8  anti-kickback statutes.  Specifically, Defendants' conduct violates the California False Claims

9  Law, Cal. Gov't Code §§ 12650 *et seq*.; the Colorado Medicaid False Claims Act, Colo. Rev.

10  Stat. §§ 25.5-4-303.5 *et seq*.; the Connecticut False Claims Act, Conn. Gen. Stat. §§ 17b-301a *et*

11  *seq*.; the Delaware False Claims and Reporting Act, 6 Del. C. §§ 1201 *et seq*.; the Florida False

12  Claims Act, Fla. Stat. Ann. §§ 68.081 *et seq*.; the Georgia State False Medicaid Claims Act, Ga.

13  Code Ann. §§ 49-4-168 *et seq*.; the Hawaii False Claims Law, Haw. Rev. Stat. §§ 661-21 *et seq*.;

14  the Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. §§ 175/1 *et seq*.; the

15  Indiana False Claims and Whistleblower Protection Act, Ind. Code Ann. §§ 5-11-5.5-1 *et seq*.;

16  the Iowa False Claims Act, Iowa Code §§ 685.1 *et seq*.; the Louisiana Medical Assistance

17  Programs Integrity Law, La. Rev. Stat. §§ 46:437.1 *et seq*.; the Maryland False Health Claims

18  Act, Md. Code Ann., Health-Gen. §§ 2-601 *et seq*.; the Massachusetts False Claims Law, Mass.

19  Gen. Laws ch. 12, §§ 5A *et seq*.; the Michigan Medicaid False Claims Act, Mich. Comp. Laws

20  §§ 400.601 *et seq*.; the Minnesota False Claims Act, Minn. Stat. §§ 15C.01 *et seq*.; the Nevada

21  False Claims Act, Nev. Rev. Stat. Ann. §§ 357.010 *et seq*.; the New Jersey False Claims Act,

22  N.J. Stat. §§ 2A:32C-1 *et seq*.; the New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §§

23  27-14-1 *et seq*.; the New York False Claims Act, N.Y. State Fin. Law §§ 187 *et seq*.; the North

24  Carolina False Claims Act, N.C. Gen. Stat. §§ 1-605 *et seq*.; the Oklahoma Medicaid False

25  Claims Act, Okla. Stat. tit. 63 §§ 5053 *et seq*.; the Rhode Island False Claims Act, R.I. Gen.

26  Laws §§ 9-1.1-1 *et seq*.; the Tennessee False Claims Act, Tenn. Code Ann. §§ 4-18-101 *et seq*.,

27  and the Tennessee Medicaid False Claims Act, Tenn. Code Ann. §§ 71-5-181 *et seq*.; the Texas

28  Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. §§ 36.001 *et seq*.; the Vermont

-4-

COMPLAINT

1  False Claims Act, 32 V.S.A. § 630 *et seq.*; the Virginia Fraud Against Taxpayers Act, Va. Code

2  Ann. §§ 8.01-216.1 *et seq.*; the Wisconsin False Claims for Medical Assistance Act, Wis. Stat.

3  §§ 20.931 *et seq.*; the Washington State Medicaid Fraud False Claims Act, Wash. Rev. Code §§

4  74.66.005 *et seq.*; and the District of Columbia False Claims Act, D.C. Code §§ 2-381.01 *et seq.*

5      13.     Based on these provisions, *Qui Tam* Plaintiff and Relator Robert Jagielski seeks

6  to recover all available damages, civil penalties, and other relief for federal and state law

7  violations alleged in this Complaint in every jurisdiction to which Defendants' misconduct has

8  extended.

9  **II.    PARTIES**

10     14.     *Qui Tam* Plaintiff and Relator Robert Jagielski is a resident of Las Vegas,

11  Nevada.  From April 2016 until December 2017, Mr. Jagielski was Compliance Director for

12  Clinical Integration at MedProVidex, a subsidiary of Dignity Health. in Rancho Cordova,

13  California.

14     15.     Defendant Apria Healthcare Group, Inc. ("AHGI"), headquartered in Lake Forest,

15  California, is a privately held corporation owned by a group of investment limited partnerships

16  managed by Affiliates of Blackstone, a New York private equity firm that trades on the New

17  York Stock Exchange under the ticker BX.  AGHI also owns and operates a pharmacy network

18  that specializes in respiratory medications and ships medications to all fifty states.  AHGI serves

19  more than 1.8 million patients per year and reports over $1 billion in annual revenue.

20     16.     Apria Healthcare LLC ("AHL") is a Delaware corporation and a wholly owned

21  subsidiary of AHGI.  AHL provides home respiratory therapy, negative pressure wound therapy,

22  home enteral nutrition therapy and support, and home medical equipment through more than 300

23  locations throughout the United States, including locations in this District.  In most cases, AHL

24  bills patients and their insurers—including Medicare, various Medicaid programs, other

25  government health insurance programs, or private health insurers—for the services, drugs, and/or

26  other care AHL provides.

27     17.     AHGI and AHL are referred to in this complaint collectively as "Apria."

28

594459.1

18.     Defendant Dignity Health ("Dignity") is a California non-profit public benefit corporation that owns or operates 41 acute care hospitals and over 400 care centers in Arizona, California, and Nevada, including hospitals and care centers in this District. Dignity's corporate headquarters and principal place of business are in San Francisco, California. In most cases, Dignity bills patients and their insurers—including Medicare, various Medicaid programs, other government health insurance programs, or private health insurers—for the services, drugs, and/or other care provided.

## III.     JURISDICTION AND VENUE

19.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 31 U.S.C. § 3732, the last of which confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. In addition, 31 U.S.C. § 3732(b) confers jurisdiction on this Court over the state-law claims asserted in Counts III-XXXI of this Complaint.

20.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process, and because Defendants have minimum contacts with the United States. Moreover, Defendants can be found in, reside, and/or transact or have transacted business in this District.

21.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because Defendants can be found in and/or transact or have transacted business in this District. At all times relevant to this Complaint, Defendants regularly conducted substantial business, maintained employees, and/or made significant sales in this District. In addition, statutory violations, as alleged in this Complaint, occurred in this District.

## IV.     FEDERAL AND STATE-FUNDED HEALTH CARE PROGRAMS

### A.     Medicare

22.     Medicare is a federally funded health insurance program primarily benefitting the elderly. The allegations in this Complaint implicate Medicare Parts A, B, and C. Medicare Part A covers the cost of inpatient hospital services. Medicare Part B provides coverage for durable medical equipment ("DME") when prescribed by a physician for use in a beneficiary's home.

594459.1

1   Medicare Part C covers DME provided to Medicare beneficiaries enrolled in Medicare

2   Advantage plans when prescribed by physicians for use in beneficiaries' homes.

3       23.     The Centers for Medicare and Medicaid Services ("CMS"), an agency of the

4   Department of Health and Human Services ("HHS"), administers the Medicare program.

5       **B.     Medicaid**

6       24.     Medicaid was created in 1965 under Title XIX of the Social Security Act.  The

7   federal government and states that participate in the program jointly fund it.  Participating states

8   receive federal money to provide certain medical services to the poor.  42 U.S.C. §§ 1396 *et seq.*

9   The federal government reimburses states each quarter for a percentage of their expenditures

10   made in providing specific types of "medical assistance" under the plan.  *Id.* § 1396b(a)(1).

11   Each State's Medicaid program covers DME when prescribed by a physician and medically

12   necessary inpatient or outpatient services performed by hospitals.

13       **C.     Other Federal and State-Funded Health Care Programs**

14       25.     The federal government administers other health care programs that include, but

15   are not limited to, TRICARE, CHAMPVA, and the Federal Employee Health Benefit Program.

16       26.     TRICARE, which the United States Department of Defense administers, is a

17   health care program for individuals and dependents affiliated with the armed forces.  TRICARE

18   covers DME when prescribed by a physician.

19       27.     CHAMPVA, which the United States Department of Veterans Affairs

20   administers, is a health care program for the families of veterans with 100-percent service-

21   connected disabilities.  CHAMPVA covers DME when prescribed by a physician.

22       28.     The Federal Employee Health Benefit ("FEHB") Program, which the United

23   States Office of Personnel Management administers, provides health insurance for federal

24   employees, retirees, and their survivors.  FEHB covers DME when prescribed by a physician.

25       29.     The States have other programs providing health care benefits to certain

26   individuals based on those individuals' financial need, employment status, or other factors.  This

27   Complaint refers to those programs as "state-funded health care programs."  Those programs

28   cover DME when prescribed by a physician.

## V.    APPLICABLE LAW

### A.    The AKS Prohibits Offering Financial Incentives to Induce Referrals or Recommendations for Goods or Services Paid for with Federal Funds

30.    Congress enacted the AKS out of concern that kickbacks to physicians would result in those individuals providing goods or services to patients in response to economic self-interest, rather than untainted medical judgment.  Underlying the statute is an understanding that corrupted medical judgment may lead to physicians providing goods or services that are medically unnecessary, of poor quality, or even harmful to a vulnerable patient population.  The AKS addresses the substantial risk that kickback-tainted medical decisions may increase costs to federal health care programs and beneficiaries, may result in the overutilization of goods and services, and may lead to unfair competition.  The AKS also benefits the public fisc because it excludes kickbacks and other inducements whose value may not be passed on to the government from the market for government-reimbursed health care services and products, thus ensuring that decisions between competing health care services are made solely on the basis of merit and price.  The AKS's prohibition against the payment of kickbacks applies regardless of whether a particular kickback actually gives rise to the effects Congress feared.

31.    The AKS prohibits any individual or entity from knowingly and willfully offering or paying any "remuneration," directly or indirectly, overtly or covertly, in cash or in kind, to any person to induce a referral or recommendation for any item or service reimbursed in whole or in part under a Federal healthcare program.  42 U.S.C. § 1320a-7b(b)(2).  It also prohibits the solicitation or receipt of any "remuneration" in return for a referral or recommendation for any item or service reimbursed in whole or in part under a Federal healthcare program.  42 U.S.C. § 1320a-7b(b)(1).  "Remuneration," under the AKS, means anything of value.  Accordingly, under the statute, subject only to "safe harbor" exceptions not applicable here, it is unlawful for health care vendors (including Defendants) to give or receive anything of value in exchange for referrals or recommendations.  *Id.*

594459.1

**B.    Providers—Including Hospitals and DME Vendors—Must Comply With the AKS and Analogous State Laws to Participate in and Receive Payment from Federal and State-Funded Health Care Programs**

32.    Compliance with the AKS is a condition of payment under federally funded health care programs. A claim that includes items or services resulting from a violation of the AKS constitutes a false or fraudulent claim for purposes of the False Claims Act. 42 U.S.C. § 1320a-7b(g). Such a claim is false or fraudulent under the FCA because providers of such services are ineligible to participate in government health care programs and because the government would not have paid such claims had it known of the kickbacks.

33.    Such claims also violate the terms of provider agreements. Hospitals that wish to bill Medicare must enroll in the Medicare program. To do so, hospitals enter into a participation agreement with Medicare using CMS Form 855A. Section 15A of CMS Form 855A contains the following certification that hospitals are required to sign:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare.
>
> …
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

Dignity and Apria's other hospital customers who participate in Medicare have executed CMS Form 855A.

34.    To bill Medicare for DME, suppliers must also enroll in the Medicare program. To do so, suppliers enter into a participation agreement with Medicare using CMS Form 855S. Section 15B of CMS Form 855S contains the following certification that suppliers are required to sign:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section

-9-

COMPLAINT

1   1B of this application. The Medicare laws, regulations, and program
    instructions are available through the fee-for-service contractor. I
2   understand that payment of a claim by Medicare is conditioned upon
    the claim and the underlying transaction complying with such laws,
3   regulations, and program instructions (including, but not limited to,
    the Federal anti-kickback statute, 42 U.S.C. section 1320a-7b(b)
4   (section 1128B(b) of the Social [S]ecurity Act) and the Physician
5   Self-Referral Law (Stark Law), 42 U.S.C. section 1395nn (section
    1877 of the Social Security Act).
6

7   …

8   I will not knowingly present or cause to be presented a false or
    fraudulent claim for payment by Medicare, and will not submit
9   claims with deliberate ignorance or reckless disregard of their truth
    or falsity.

10  Apria has executed CMS Form 855S.

11      35.     The States also have enacted statutes prohibiting kickbacks in connection with

12  state Medicaid services. Pursuant to state statutes, regulations, and other administrative

13  materials, the States have made compliance with both federal and state anti-kickback statutes and

14  rules a prerequisite to a physician's right to receive or retain reimbursement payments from state-

15  funded health care programs. *See* Cal. Welf. & Inst. Code §§ 14107.2(a), (b), 14107.11-(a)(2);

16  10 Colo. Code Regs. §§ 2505-10-8.076.1(7)(b), (j); Conn. Gen. Stat. §§ 53a-161c, 53a-161d;

17  Conn. Agencies Reg. § 17b-262-531(b); D.C. Code § 4-802(c)–(d); Del. Code Ann. tit. 31, §

18  1005; Fla. Stat. §§ 409.907, 409.920(2)(e); Haw. Code R. § 17-1739.1-3(c); 305 Ill. Comp. Stat.

19  5/8A-3(b)(2), (c)(2); Ind. Code §§ 12-15-22-1, 12-15-24-2; 405 Ind. Admin. Code 1-1-4(a)(6);

20  Iowa Code § 249A.47(f); La. Rev. Stat. Ann. § 46:438.2(2)(A)(2); Md. Code Ann., Crim. Law

21  §§ 8-511, 8-516; Md. Code Regs. § 10.09.03.09; Mass. Gen. Laws ch. 118E § 41; 130 Mass.

22  Code Regs. §§ 450.249(B)-(c), 450.261; Mich. Comp. Laws § 400.604; Minn. Stat. §§

23  256B.064-1a(7), 256B.064-1b; Minn. R. §§ 9505.2165-4(C), 9505.2215-1A; Nev. Rev. Stat. §

24  422.560(1)(a); N.J. Stat. Ann. § 30:4d-17(c); N.J. Admin. Code § 10:49-5.5(a)(17); N.M. Stat.

25  Ann. § 30-44-7(A)(1); N.M. Code R. §§ 8.302.1.11, 8.351.2.9-13; N.Y. Soc. Serv. Law § 366-

26  D(2); N.Y. Comp. Codes R. & Regs., tit. 18, §§ 515.2(b)(5), 518.1-2; N.C. Gen. Stat. §§ 108A-

27  63(g), (h), 108A-70.16; N.C. Admin. Code 22F.0301(5); Okla. Stat., tit. 56, § 1005(A)(6); R.I.

28  Gen. Laws §§ 5-48.1-3(a), (b), 40-8.2-3(a)(2); R.I. Code R. § 0301.20(1); Tenn. Code Ann. §71-

-10-

594459.1

1   5-118; Tenn. Comp. R. & Regs. §§ 1200-13-1-.05(1)(a)(6), 1200-13-1-.21(2), (3); Tex. Hum.

2   Res. Code Ann. §§ 32.039(b), 32.039(c)(1); Tex. Penal Code Ann. § 35A.02(a)(5); Va. Code

3   Ann. § 32.1-315; Wash. Rev. Code § 74.09.240; Wash. Admin. Code § 182-502-0016(1); *see*

4   *also* Florida Medicaid Provider Handbook; Georgia Medicaid Manual; Hawaii State Medicaid

5   Manual; Illinois Medicaid Handbook; Indiana Medicaid Provider Manual; Louisiana Medicaid

6   Provider Manual; Michigan Medicaid Provider Manual; Minnesota Medicaid Provider Manual;

7   Nevada Medicaid Services Manual; Oklahoma Medicaid Provider Billing and Procedure

8   Manual; Virginia Medicaid Provider Manual.

9       36.    Many states, including California, Colorado, Connecticut, Delaware, Florida,

10   Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Nevada, New

11   Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas,

12   Virginia, Washington, and the District of Columbia, also require Medicaid providers to enter into

13   provider agreements obligating them to comply with all applicable federal and state Medicaid

14   laws (sometimes with specific emphasis on the AKS) and/or conditioning the right to payment

15   on compliance with those laws. For example, California's Medi-Cal provider agreement states:

16   "Provider agrees to comply with all applicable provisions of Chapters 7 and 8 of the Welfare and

17   Institutions Code (commencing with Sections 14000 and 14200) …." Medi-Cal Provider

18   Agreement, ¶ 2, *available at*: https://files.medi-cal.ca.gov/pubsdoco/Publications/masters-

19   other/provappsenroll/02enrollment_DHCS6208.pdf (last accessed: April 18, 2019). Those

20   provisions include Cal. Welf. & Inst. Code § 14107.2, one of California's anti-kickback statutes.

21   The provider agreement further states:

22           Provider agrees that it shall not offer, give, furnish, or deliver any
23   rebate, refund, commission preference, patronage dividend,
    discount, or any other gratuitous consideration, in connection with
24   the rendering of health care services to any Medi-Cal beneficiary.
    Provider further agrees that it shall not solicit, request, accept, or
25   receive, any rebate, refund, commission preference, patronage
    dividend, discount, or any other gratuitous consideration, in
26   connection with the rendering of health care services to any Medi-
    Cal beneficiary. Provider further agrees that it will not take any
27   other action or receive any other benefit prohibited by state or
28   federal law.

-11-

*Id.* at ¶ 20.

## VI.    FACTUAL BACKGROUND

### A.    Apria's Provision of Discounts for Uninsured Patients in Exchange for Referrals or Recommendations for Insured Patients

1.    Hospitals' Burden of Providing Post-Discharge Care to Uninsured Patients

37.    When hospitals admit patients for inpatient services or emergency treatment, the hospitals typically bill the patients' insurers (including government health insurance programs) under applicable billing procedures.  If a hospital provides services to uninsured patients, it may attempt to recover some or all of the cost from the patients themselves, it may seek to enroll the patients in patient-assistance programs, or it may write off the value of the care as charity care.

38.    In some circumstances, a hospital also may assume responsibility for paying third-party vendors to provide DME to some uninsured patients <u>after</u> those patients have been discharged from the hospital.  Hospitals may acquire an obligation to treat uninsured patients in a variety of ways.  For example, the Emergency Medical Treatment and Active Labor Act of 1986 ("EMTALA") requires hospitals with emergency departments to provide emergency care regardless of a patient's ability to pay, and provides that they cannot discharge a patient receiving emergency treatment until the patient's condition has "stabilized," which may require the continued provision of therapy that requires DME.  42 U.S.C. § 1395dd.  Many nonprofit hospitals provide care to the uninsured for free or with financial assistance in order to establish a right to favorable tax treatment.  13 U.S.C. § 501(c)(3); I.R.S. Rev. Rul. 69-545.  Other hospitals may undertake the care of uninsured patients to satisfy state laws, a sense of civic duty, or institutional principles.

39.    Hospitals that admit uninsured patients who need certain therapy services as part of their treatment often find it fiscally prudent to pay a third party to provide that therapy in-home or at alternate sites once the patient no longer requires other services from the hospital.  This is because a variety of laws—EMTALA, state regulations, and medical malpractice law among them—effectively prohibit hospitals from discharging patients when the conditions for which they were admitted require continued treatment but the patients lack the ability to pay for that treatment themselves.  In those circumstances, a hospital may decide to discharge a patient

-12-

and pay for post-discharge care, including necessary DME and supplies, rather than keeping the patient in the hospital, thus freeing up hospital capacity for insured patients and avoiding the additional uncompensated costs of an extended patient stay. Accordingly, hospitals commonly agree to pay other providers for tube feeding, sleep apnea, respiratory therapy, wound care, and non-invasive ventilation services, drugs, DME, and supplies for uninsured patients after those patients' discharge from the hospitals.

40.     DME providers are paid in a variety of ways. For beneficiaries with traditional fee-for-service Medicare, DME providers submit claims to, and are reimbursed by, Medicare contractors under Medicare Part B's durable medical equipment benefit. For Medicare beneficiaries covered by Medicare Part C Medicare Advantage insurance plans, DME providers submit claims to, and are reimbursed by, the Medicare Advantage insurers. For DME covered by CHAMPVA, providers typically bill the Veterans' Administration. For DME covered by Medicaid, DME providers submit claims to, and are reimbursed by, the state plans or Medicaid HMOs. For services and goods covered by TRICARE, DME providers submit claims to, and are reimbursed by, TRICARE in accordance with their benefits and claims policies.

41.     Apria is a DME provider and bills Medicare, TRICARE, state Medicaid programs, and other federal and state-funded health care programs, among others, for DME provided to patients.

2.     Apria's Provision of Discounted DME and Associated Services to Induce Dignity and Other Hospitals to Refer Home Therapy Business to Apria

42.     Apria converted hospitals' burden of paying for the care of indigent patients into an opportunity to buy those hospitals' lucrative referrals for insured (including government-insured) patients through discounts on DME and supplies for uninsured patients, in violation of the AKS and analogous state laws.

43.     The health of Apria's business depends in large part on the decisions hospitals make every day to refer their insured patients—including patients insured by government programs—to Apria for DME and related therapy services, rather than to Apria's competitors. To develop and maintain an edge over those competitors, Apria has given, and continues to give, many hospitals discounted DME and supplies for those hospitals' uninsured patients as an

-13-

COMPLAINT

1  explicit inducement for referrals for insured patients under a contract between Apria and its
2  hospital referral sources.

3        44.     Apria codifies this arrangement in a standardized agreement for a "Preferred
4  Vendor" relationship (the "Preferred Vendor Agreement") that it executes with the recipients of
5  its kickbacks. *See* Exhibit A (Preferred Vendor Agreement between Apria and Dignity).
6  Although Exhibit A is specific to Dignity and may contain some differences from Preferred
7  Vendor Agreements with other providers, Relator is informed and believes that the key
8  provisions described herein are included in each Preferred Vendor Agreement.  On or around
9  March 3, 2017, Barbara Harding, Senior Director, Post-Acute Care Services for Dignity, told
10  Relator that the Preferred Vendor Agreement was Apria's model agreement and this was
11  "Apria's show."  The Preferred Vendor Agreement and the *quid pro quo* arrangement described
12  in it are key elements of Apria's efforts to induce referrals.

13        45.     The Preferred Vendor Agreement requires that signatory hospitals refer patients
14  who need DME to Apria, subject only to the patients' right to reject the referral:

15              Vendor will be considered a preferred vendor of Products for
16              Discharged Patients of the Designated Dignity Health facilities in
                need of Products.  Vendor and Dignity Health acknowledge,
17              however, that patients shall at times have the freedom to choose
                the provider from which they wish to receive products and services
18              (referred to herein as the "patient freedom-of-choice doctrine").

19  Exh. A, ¶ 1.14.  The Preferred Vendor Agreement further emphasizes that Dignity must refer
20  patients to Apria unless the patients refuse:

21              **Dignity Health's Obligations.**  Pursuant to a physician's order,
                each Designated Dignity Health Facility shall determine when a
22              Discharged Patient requires Products under this Agreement and
                shall notify Vendor by providing Vendor with complete and
23              accurate patient intake information consistent with the intake
                checklist ....  Designated Dignity Health Facilities will refer to
24              Vendor all new patients who need Products on a "first call" basis,
                subject to the patient freedom-of-choice doctrine and the other
25              terms of this Agreement.

26  *Id.*, ¶ 1.16.

27

28

-14-
COMPLAINT

594459.1

46.     In exchange for the signatory hospitals' referrals, the Preferred Vendor

Agreement explicitly requires Apria to give signatory hospitals discounts on DME and supplies

for uninsured patients:

> For selected Discharged Patients who: (i) are members of
> underserved patient populations, (ii) are approved by the
> Designated Dignity Health Facility in writing, and (iii) select
> Vendor [Apria] as their home healthcare provider, the applicable
> Designated Dignity Health Facility will reimburse Vendor at the
> discounted rates set forth in the attached Schedule E for items and
> services provided to such Discharged Patients by Vendor in the
> home setting.

*Id.*, ¶ 2.1. Schedule E is titled "VENDOR'S SCHEDULE OF DISCOUNTED RATES FOR

INDIGENT PATIENTS." *Id.*, Schedule E.

47.     In addition to discounting goods for uninsured patients, Apria provided Dignity

with other valuable forms of remuneration. One such form of remuneration was intake

coordination services. Under the Preferred Vendor Agreement with Dignity, for example, Apria

agreed to "make one or more of its employees available at such Designated Dignity Health

Facility in the capacity of Products Intake Coordinator." *Id.*, ¶ 1.6. Products Intake Coordinators

"work cooperatively with Dignity Health discharge planners, the patient, and/or family members

of the patient, the ordering physician, Dignity Health therapists, and others as appropriate to

ensure that each intake is comprehensive, accurate, and properly documented." *Id.*, Schedule C,

III(A).

48.     Although the Agreement states that Intake Coordinators will not perform, and will

not be asked to perform, discharge planning services or other services that are the responsibility

of Dignity to perform, *id.*, III(B), Dignity and Apria have not abided by those provisions of the

Agreement. In practice, Apria Intake Coordinators, who are present in Dignity Hospitals,

perform a variety of functions on behalf of Dignity, including assisting Dignity with discharging

patients.

49.     A November 2016 Apria presentation to Dignity entitled "Apria and Dignity

Health Launch Meeting," which describes the Preferred Vendor arrangement between Apria and

Dignity, confirms that Intake Coordinators (or "liaisons") assist Dignity with patient discharges.

594459.1

1    A copy of the presentation is included as Exhibit B to the Complaint. The presentation states,

2    "Liaison [will be] on-site to expedite discharges Monday – Friday." Exh. B at 11. Another page

3    of the presentation describes the functions of liaisons in greater detail. Under the heading

4    "Patient Discharge," the presentation states that "Liaison Support" "[p]artners with Dignity

5    Health Coordination and Customer Service teams to expedite discharge process" and [r]eviews

6    equipment instructions with patient and/or caregivers pre-discharge." *Id.* at 15. To Relator's

7    knowledge, this presentation—which, unlike the Preferred Vendor Agreement, does not spell out

8    functions that Intake Coordinators were supposedly prohibited from performing—was the only

9    training Dignity and Apria gave to Dignity employees on the role of Intake Coordinators. Thus,

10   Dignity employees were unaware that Intake Coordinators were supposedly prohibited from

11   performing tasks, such as assisting with patient discharges, that were Dignity's role to perform.

12        50.    Assisting hospital personnel in the process of discharging Dignity patients is a

13   thing of value: it relieves hospital personnel of some of the burden of fulfilling those duties and

14   allows hospitals to free up beds for other patients more quickly than they otherwise could.

15        51.    A significant portion of the referrals from Dignity to Apria for post-discharge

16   DME and related services is reimbursed by federal and state-funded health care programs.

17   Health plans that contract with Dignity Health include: Care1st Health Plan, which offers

18   managed Medicare and Medicaid plans in Arizona; Citizens Choice Healthplan (now Alignment

19   Health Plan), a Medicare Advantage plan based in Orange County, California; Easy Choice

20   Health Plan, which offers Medicaid and Medicare managed plans to beneficiaries nationwide;

21   Health Net of California, which offers managed Medicare and Medi-Cal plans; Sansum IPA,

22   which offers a variety of government health plans to residents of Santa Barbara County; Seaview

23   IPA, many of whose members in Ventura County, California have Medicare Advantage plans;

24   TRICARE; and Valley Care IPA, many of whose members in Southern California have

25   Medicare Advantage plans. *See id.* at 14. Non-contracted payors include: CenCal Health, which

26   is a Managed Medi-Cal plan for residents of Santa Barbara and San Luis Obispo counties;

27   GenCare Managed Care Systems, which offers a variety of Medicare Advantage plans to

28   members in Kern County, California; Gold Coast Health Plan, which offers Medi-Cal managed

plans to residents of Ventura County, California; Medicare; Scan, a Medicare Advantage plan in California; and Ventura County Health Plan, a health maintenance organization ("HMO") for Ventura County government employees and their covered dependents.

52.     Defendants submitted, or caused to be submitted, claims for payment to the United States (or its contractors) under the Medicare, TRICARE, CHAMPVA, and Federal Employee Health Benefit programs, and to the States (or their contractors) under state Medicaid and other state-funded health care programs, as a result of referrals from Dignity and other hospitals that entered into the Preferred Vendor Agreement with Apria.

**B.      Dignity's Provision of Billing Software to Referring Providers to Induce those Providers to Make Referrals or Recommendations to Dignity**

53.     Health care providers typically use billing software to integrate data and submit claims to insurers, including Medicare and Medicaid.

54.     Dignity has developed billing software interfaces that allow outside providers, including physician practice groups, to obtain information from Dignity for billing purposes. The software also provides demographic data on patients for submission by providers to qualified clinical data registries ("QCDRs"), which are approved by CMS and used by providers to meet requirement under CMS's Quality Payment Program. The software that Dignity develops is not electronic health records ("EHR") software and is not used to share patient medical records.

55.     The cost of developing the interfaces is high. In at least one case, the cost was estimated at over $40,000.

56.     For example, one Dignity hospital, Northridge Hospital Medical Center, entered into an agreement with Jahandar Reza Saleh, a cardiologist in Northridge, California, for the provision of a software interface to enable Dr. Saleh to bill his patients' insurers more easily. On January 23, 2017, Dignity and Dr. Saleh executed an E-Network Data Delivery Agreement that provides, in relevant part:

> **Purpose of the Agreement.** Hospital and Healthcare Provider each agrees that it enters into this Agreement for the purpose of facilitating Healthcare Provider's request for, and Dignity Health's provision of access to, certain Data by and through the e-Network

-17-

COMPLAINT

1
2

> … Healthcare Provider shall receive all Data via its electronic billing system, which system shall store and distribute such information to the appropriate and authorized individuals.

3
4
5

> **Data to be Provided.** Pursuant to this Agreement, Dignity Health agrees to provide access to Data that is commonly referred to as a patient's "face sheet" solely for the purpose of enabling Healthcare Provider's Payment activities.

6

Exh. C at 1.

7      57.    Dignity also drafted a "Privacy Impact Assessment Checklist Risk Assessment"

8   for the arrangement with Dr. Saleh. Exh. D. In that Assessment, Dignity summarized the

9   project as follows: "Implement ADT interface to deliver data to Dr. Jahandar Saleh for billing

10  purposes in pMD Soft. Currently the process is manual and staff type the patient information

11  into pMD Soft to create the patient so they can bill them. The interface will create the patients

12  for them eliminating the need for manual entry and speeding up the billing process." *Id.* The

13  Assessment also contains a "Data Use" section with two boxes checked as the use of data: (1)

14  "Treatment or Payment of another provider per provisions of written agreement/MSA or SOW"

15  and (2) "Health Care Operations of another provider." *Id.* The user of data, Dr. Saleh, is

16  identified as an "Unrelated Covered Entity." *Id.*

17     58.    The Agreement with Dr. Saleh contains a self-serving disclaimer that "Nothing in

18  this Agreement or in any written or oral agreement between Hospital and Healthcare Provider

19  contemplates or requires the admission or referral of any patients or business by either Party."

20  Exh. D at 11. The assertion that referrals are not "contemplate[d] or require[d]" is inconsistent

21  with a recital in the same Agreement that states, "Dignity Health and Healthcare Provider will

22  each have a Treatment relationship with each individual for which Healthcare Provider may

23  request PHI [Protected Health Information from Dignity Health through the e-Network." *Id.*

24     59.    In fact, the purpose of the agreement with Dr. Saleh was to induce referrals by

25  rewarding him for the volume of referrals he made to Dignity. There was no other legitimate

26  explanation for why Dignity would agree to provide a referring provider with valuable billing

27  software. Dignity did not provide such billing interfaces for doctors who referred few patients to

28  Dignity.

594459.1

1    60.    Relator is aware from several Dignity employees, including Michelle Kirby,

2  Service Area Compliance Director, North State (northern California); Penny Thurman, Service

3  Area Compliance Director, Nevada; Manisha Patel, Health Information Exchange Manger; Ms.

4  Patel's direct supervisor; and the senior leader that oversaw this Program that Dignity has

5  entered into similar agreements with hundreds of other providers.  Those colleagues told Relator,

6  or were present during discussions where other Dignity employees told Relator, that Dignity

7  entered into these agreements "all the time" and that they understood that Dignity only provided

8  the software to providers that Dignity's management identified as "strategic" providers.

9    61.    From approximately June 2017 until Relator left Dignity in December 2017,

10  Relator participated in bi-weekly Privacy Impact Assessment ("PIA") meetings.  The meetings

11  were attended by Dignity's regional service area compliance directors, including Megan

12  Micaletti, Michelle Kirby, and Penny Thurman, as well as IT staff, including Ms. Patel, Ms.

13  Patel's supervisor, and other senior compliance and IT leaders.  While the primary purpose of the

14  meetings was to discuss whether the billing software complied with HIPPA, attendees also

15  discussed whether Dignity's provision of the software to referring providers complied with the

16  AKS.  IT representatives expressed their belief that the billing software would reduce

17  administrative costs for Dignity.  Ms. Micaletti and Relator challenged that assertion, noting that

18  in lieu of the billing software, Dignity could fax providers information those providers needed

19  for billing at no cost to Dignity.

20  **VII.   DEFENDANTS' CONDUCT VIOLATED THE FEDERAL FCA AND THE**
**CALIFORNIA FCA**
21

22    62.    Apria's provision of DME and related goods at discounted prices for its referral

23  sources' uninsured patients and its provision of employees to perform discharge services to those

24  referral sources in exchange for DME referrals constitute remuneration to hospitals to induce

25  those hospitals to make referrals or recommendations of Apria products or services for which

26  payment may be made in whole or in part under federal health care programs.  It therefore

27  violates the AKS.  42 U.S.C. § 1320a-7b(b)(2).  Dignity's receipt of that remuneration in

28  exchange for its referrals and recommendations likewise violates the AKS.  42 U.S.C. § 1320a-
7b(b)(1).  Defendants' conduct does not fall into any "safe harbor" or exception to the AKS's

-19-

1  prohibitions.  Accordingly, Apria's claims to the United States and the States for payment for

2  DME and other services provided to patients referred by hospitals that signed the Preferred

3  Vendor Agreement are violations of the False Claims Act.  42 U.S.C. § 1320a-7b(g).  Apria

4  submitted and caused those false claims, and, as to claims submitted as a result of the Preferred

5  Vendor Agreement between Apria and Dignity, Dignity also caused their submission.

6       63.  Dignity's provision of billing software to referring physicians also constitutes the

7  provision of "remuneration" to providers "to induce such [providers] … to refer an individual to

8  [Dignity] for the furnishing or arranging for the furnishing of any item or service for which

9  payment may be made in whole or in part under a Federal healthcare program," and therefore

10  violates the AKS.  42 U.S.C. § 1320a-7b(b)(2).  Dignity's conduct does not fall into any "safe

11  harbor" or exception to the AKS's prohibitions.  Dignity's claims to the United States and the

12  States for payment for services provided to patients referred to Dignity hospitals by physicians to

13  whom Dignity provided billing software are violations of the federal and state False Claims Acts.

14  42 U.S.C. § 1320a-7b(g).

15       64.  At all relevant times, Defendants knew, deliberately ignored, or recklessly

16  disregarded the unlawfulness of their conduct.  Defendants are well aware of the prohibitions of

17  the AKS.  Apart from the widespread and inescapable knowledge in the health care industry

18  resulting from large civil damages and penalties paid in FCA cases alleging violations of the

19  AKS, as participants in government health care programs, both Apria and Dignity regularly

20  require their employees to undergo regular AKS training.

21       65.  For example, Apria's Code of Ethical Business Conduct, which binds each of

22  Apria's employees, acknowledges that:

23          It is against the law … to provide a "kickback" or any other improper

24          incentive or inducement to a referral source or any other party for
        the referral of home healthcare services and products.  Such

25          incentives may include excessive discounts, supplies and
        equipment, … [or] write-offs ….

26          Apria Healthcare is subject to federal and state laws, rules and

27          regulations that prohibit the offering, soliciting, giving or receiving
        of anything of value to an existing or potential referral source to

28          induce the referral source to refer home healthcare business to Apria
        Healthcare.

-20-

COMPLAINT

...

> [S]ales and service representatives have a special responsibility to be aware of the laws, rules and regulations dealing with inducements and must be particularly sensitive to any situation that could result in an inducement.

66.     Similarly, Dignity's Standards of Conduct, which bind all Dignity employees, provide that Dignity "prohibits its employees from offering or giving money, services or other things of value with the expectation of influencing the judgment or decision-making process of any referral source ...." The Standards of Conduct also make specific reference to the AKS: "The fraud and abuse laws prohibit knowingly and willfully offering, paying, soliciting or receiving any money gifts, kickbacks, bribes, rebates or any other type of value, remuneration or services in return for the referral of patients or to induce the purchase, lease, or ordering of any item, good or services for which payment may be made by the federal or state government."

67.     Indeed, the Preferred Vendor Agreement between Apria and Dignity itself demonstrates Defendants' knowledge. The agreement explicitly acknowledges that the AKS prohibits the provision "hereunder," *i.e.*, under the agreement itself, of "any remuneration directly or indirectly, overtly or covertly, in cash or in kind ...." Ex. A, ¶ 2.2. The agreement's description of the prices Dignity will pay for goods and services to be used by uninsured patients as "discounted" demonstrates that Dignity had actual knowledge, deliberately ignored, or recklessly disregarded that it would receive something of value—discounted rates for Apria's goods—in exchange for the referrals or recommendations contemplated by the agreement.

## VIII.   CAUSES OF ACTION

### Count I

### Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)-(C)

### Apria's Preferred Vendor Agreement

### (Against All Defendants)

68.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

69.     This is a claim for treble damages and penalties under the federal False Claims Act, 31 U.S.C. §§ 3729 – 3733.

-21-

594459.1

70.    Defendants knowingly have presented, or have caused to be presented, false or fraudulent claims for payment to the United States, in violation of 31 U.S.C. § 3729(a)(1)(A).

71.    Defendants knowingly have made or used, or caused to be made or used, false records or statements to get the United States to pay or approve false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

72.    Defendants knowingly have conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and have taken multiple steps individually and collectively to advance and execute the objectives of that conspiracy, in violation of 31 U.S.C. § 3729(a)(1)(C).

73.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented because Relator has no access to records in Defendants' possession.

74.    The United States, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

75.    Defendants have damaged, and continue to damage, the United States in a substantial amount to be determined at trial.

76.    Additionally, the United States is entitled to the maximum penalty of up to $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

**Count II**

**Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)-(B)**

**Dignity's Provision of Billing Software to Referring Providers**

**(Against Defendant Dignity Health)**

77.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 36 and 53 through 67 above as though fully set forth herein.

594459.1

78.    This is a claim for treble damages and penalties under the federal False Claims Act, 31 U.S.C. §§ 3729 – 3733.

79.    Defendant knowingly has presented, or has caused to be presented, false or fraudulent claims for payment to the United States, in violation of 31 U.S.C. § 3729(a)(1)(A).

80.    Defendant knowingly has made or used, or caused to be made or used, false records or statements to get the United States to pay or approve false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

81.    Relator cannot now identify each of the false claims for payment that Defendant presented or caused to be presented because Relator has no access to records in Defendant's or third parties' possession.

82.    The United States, unaware of the falsity of the records, statements, and claims that Defendant made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendant's illegal conduct.

83.    Defendant has damaged, and continues to damage, the United States in a substantial amount to be determined at trial.

84.    Additionally, the United States is entitled to the maximum penalty of up to $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

### Count III

### California False Claims Act, Cal. Gov't Code § 12651(a)(1)–(3)

### Apria's Preferred Vendor Agreement

### (Against All Defendants)

85.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

86.    This is a claim for treble damages and penalties under the California False Claims Act.

87.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of California for payment or approval.

-23-

594459.1

88.     Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of California to approve and pay such false and fraudulent claims.

89.     Defendants knowingly have conspired to present, or cause to be presented, false or fraudulent claims for payment or approval and to make, use, or cause to be made or used, false records or statements material to false or fraudulent claims, and have taken multiple steps individually and collectively to advance and execute the objectives of that conspiracy.

90.     Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented because Relator has no access to records in Defendants' possession.

91.     The State of California, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

92.     Defendants have damaged, and continue to damage, the State of California in a substantial amount to be determined at trial.

93.     Additionally, the State of California is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

### Count IV

### California False Claims Act, Cal. Gov't Code § 12651(a)(1)–(2)

### Dignity's Provision of Billing Software to Referring Providers

### (Against Defendant Dignity Health)

94.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 36 and 53 through 67 above as though fully set forth herein.

95.     This is a claim for treble damages and penalties under the California False Claims Act.

96.     Defendant knowingly presented, or caused to be presented, false or fraudulent claims to the State of California for payment or approval.

-24-

COMPLAINT

97.     Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of California to approve and pay such false and fraudulent claims.

98.     Relator cannot now identify each of the false claims for payment that Defendant presented or caused to be presented because Relator has no access to records in Defendant's or third parties' possession.

99.     The State of California, unaware of the falsity of the records, statements, and claims that Defendant made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendant's illegal conduct.

100.    Defendant has damaged, and continues to damage, the State of California in a substantial amount to be determined at trial.

101.    Additionally, the State of California is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

### Count V

### Colorado Medicaid False Claims Act, Colo. Rev. Stat. §§ 25.5-4-305(1)(a)–(b)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

102.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

103.    This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act.

104.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Colorado for payment or approval.

105.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Colorado to approve and pay such false and fraudulent claims.

-25-
COMPLAINT

106.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

107.    The State of Colorado, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

108.    Defendants have damaged, and continue to damage, the State of Colorado in a substantial amount to be determined at trial.

109.    Additionally, the State of Colorado is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

**Count VI**

**Connecticut False Claims Act, Conn. Gen. Stat. §§ 17b-301b(a)(1)–(2)**

**Apria's Preferred Vendor Agreement**

**(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

110.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

111.    This is a claim for treble damages and penalties under the Connecticut False Claims Act.

112.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Connecticut for payment or approval.

113.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Connecticut to approve and pay such false and fraudulent claims.

114.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

-26-

COMPLAINT

1    115.    The State of Connecticut, unaware of the falsity of the records, statements, and

2    claims that Defendants made or caused to be made, paid and continues to pay the claims that

3    would not be paid but for Defendants' illegal conduct.

4    116.    Defendants have damaged, and continue to damage, the State of Connecticut in a

5    substantial amount to be determined at trial.

6    117.    Additionally, the State of Connecticut is entitled to the maximum penalty of

7    $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each

8    and every violation alleged herein.

9                                **Count VII**

10          **Delaware False Claims and Reporting Act, 6 Del C. §§ 1201(a)(1)–(2)**

11                      **Apria's Preferred Vendor Agreement**

12          **(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

13    118.    Relator realleges and incorporates by reference the allegations contained in

14    paragraphs 1 through 2 and 62 through 67 above as though fully set forth herein.

15    119.    This is a claim for treble damages and penalties under the Delaware False Claims

16    and Reporting Act.

17    120.    Defendants knowingly presented, or caused to be presented, false or fraudulent

18    claims to the State of Delaware for payment or approval.

19    121.    Defendants knowingly made, used, or caused to be made or used false records and

20    statements, and omitted material facts, to induce the State of Delaware to approve and pay such

21    false and fraudulent claims.

22    122.    Relator cannot now identify each of the false claims for payment that Defendants

23    presented or caused to be presented, because Relator has no access to records in Defendants'

24    possession.

25    123.    The State of Delaware, unaware of the falsity of the records, statements, and

26    claims that Defendants made or caused to be made, paid and continues to pay the claims that

27    would not be paid but for Defendants' illegal conduct.

28

-27-

594459.1

124.     Defendants have damaged, and continue to damage, the State of Delaware in a substantial amount to be determined at trial.

125.     Additionally, the State of Delaware is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

**Count VIII**

**Florida False Claims Act, Fla. Stat. Ann. §§ 68.082(2)(a)–(b)**

**Apria's Preferred Vendor Agreement**

**(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

126.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

127.     This is a claim for treble damages and penalties under the Florida False Claims Act.

128.     Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Florida for payment or approval.

129.     Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Florida to approve and pay such false and fraudulent claims.

130.     Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

131.     The State of Florida, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

132.     Defendants have damaged, and continue to damage, the State of Florida in a substantial amount to be determined at trial.

133.     Additionally, the State of Florida is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

-28-

COMPLAINT

594459.1

1

**Count IX**

2

**Georgia State False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168.1(a)(1)–(2)**

3

**Apria's Preferred Vendor Agreement**

4

**(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

5  134.    Relator realleges and incorporates by reference the allegations contained in

6  paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

7  135.    This is a claim for treble damages and penalties under the Georgia State False

8  Medicaid Claims Act.

9  136.    Defendants knowingly presented, or caused to be presented, false or fraudulent

10  claims to the State of Georgia for payment or approval.

11  137.    Defendants knowingly made, used, or caused to be made or used false records and

12  statements, and omitted material facts, to induce the State of Georgia to approve and pay such

13  false and fraudulent claims.

14  138.    Relator cannot now identify each of the false claims for payment that Defendants

15  presented or caused to be presented, because Relator has no access to records in Defendants'

16  possession.

17  139.    The State of Georgia, unaware of the falsity of the records, statements, and claims

18  that Defendants made or caused to be made, paid and continues to pay the claims that would not

19  be paid but for Defendants' illegal conduct.

20  140.    Defendants have damaged, and continue to damage, the State of Georgia in a

21  substantial amount to be determined at trial.

22  141.    Additionally, the State of Georgia is entitled to the maximum penalty of $22,363,

23  as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every

24  violation alleged herein.

25

26

27

28

-29-

COMPLAINT

594459.1

1

## Count X

## Hawaii False Claims Act, Haw. Rev. Stat. §§ 661-21(a)(1)–(2)

## Apria's Preferred Vendor Agreement

## (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

142.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

143.   This is a claim for treble damages and penalties under the Hawaii False Claims Act.

144.   Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Hawaii for payment or approval.

145.   Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Hawaii to approve and pay such false and fraudulent claims.

146.   Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

147.   The State of Hawaii, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

148.   Defendants have damaged, and continue to damage, the State of Hawaii in a substantial amount to be determined at trial.

149.   Additionally, the State of Hawaii is entitled to the maximum penalty of $11,000 for each and every violation alleged herein.

-30-

COMPLAINT

594459.1

## Count XI

### Illinois Whistleblower Reward and Protection Act

### 740 Ill. Comp. Stat. §§ 175/3(a)(1)(A)–(B)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

150.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

151.     This is a claim for treble damages and penalties under the Illinois Whistleblower Reward and Protection Act.

152.     Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Illinois for payment or approval.

153.     Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Illinois to approve and pay such false and fraudulent claims.

154.     Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

155.     The State of Illinois, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

156.     Defendants have damaged, and continue to damage, the State of Illinois in a substantial amount to be determined at trial.

157.     Additionally, the State of Illinois is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

1

2

3

4

5

## Count XII

## Indiana False Claims and Whistleblower Protection Act

## Ind. Code Ann. §§ 5-11-5.5-2(b)(1)–(2)

## Apria's Preferred Vendor Agreement

## (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

6     158.    Relator realleges and incorporates by reference the allegations contained in

7  paragraphs 1 through 2 and 62 through 67 above as though fully set forth herein.

8     159.    This is a claim for treble damages and penalties under the Indiana False Claims

9  and Whistleblower Protection Act.

10     160.    Defendants knowingly presented, or caused to be presented, false or fraudulent

11  claims to the State of Indiana for payment or approval.

12     161.    Defendants knowingly made, used, or caused to be made or used false records and

13  statements, and omitted material facts, to induce the State of Indiana to approve and pay such

14  false and fraudulent claims.

15     162.    Relator cannot now identify each of the false claims for payment that Defendants

16  presented or caused to be presented, because Relator has no access to records in Defendants'

17  possession.

18     163.    The State of Indiana, unaware of the falsity of the records, statements, and claims

19  that Defendants made or caused to be made, paid and continues to pay the claims that would not

20  be paid but for Defendants' illegal conduct.

21     164.    Defendants have damaged, and continue to damage, the State of Indiana in a

22  substantial amount to be determined at trial.

23     165.    Additionally, the State of Indiana is entitled to the maximum penalty of $22,363,

24  as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every

25  violation alleged herein.

26

27

28

594459.1

## Count XIII

### Iowa False Claims Act, Iowa Code §§ 685.2(1)(a)–(b)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

166.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

167.     This is a claim for treble damages and penalties under the Iowa False Claims Act.

168.     Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Iowa for payment or approval.

169.     Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Iowa to approve and pay such false and fraudulent claims.

170.     Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

171.     The State of Iowa, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

172.     Defendants have damaged, and continue to damage, the State of Iowa in a substantial amount to be determined at trial.

173.     Additionally, the State of Iowa is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

**Count XIV**

**Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §§ 46:438.3(A)–(B)**

**Apria's Preferred Vendor Agreement**

**(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

174.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

175.    This is a claim for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law.

176.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Louisiana for payment or approval.

177.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Louisiana to approve and pay such false and fraudulent claims.

178.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

179.    The State of Louisiana, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

180.    Defendants have damaged, and continue to damage, the State of Louisiana in a substantial amount to be determined at trial.

181.    Additionally, the State of Louisiana is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

1

**Count XV**

2

**Maryland False Health Claims Act, Md. Code Ann., Health-Gen. §§ 2-602(a)(1)–(2)**

3

**Apria's Preferred Vendor Agreement**

4

**(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

5      182.    Relator realleges and incorporates by reference the allegations contained in

6    paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

7      183.    This is a claim for treble damages and penalties under the Maryland False Health

8    Claims Act.

9      184.    Defendants knowingly presented, or caused to be presented, false or fraudulent

10    claims to the State of Maryland for payment or approval.

11      185.    Defendants knowingly made, used, or caused to be made or used false records and

12    statements, and omitted material facts, to induce the State of Maryland to approve and pay such

13    false and fraudulent claims.

14      186.    Relator cannot now identify each of the false claims for payment that Defendants

15    presented or caused to be presented, because Relator has no access to records in Defendants'

16    possession.

17      187.    The State of Maryland, unaware of the falsity of the records, statements, and

18    claims that Defendants made or caused to be made, paid and continues to pay the claims that

19    would not be paid but for Defendants' illegal conduct.

20      188.    Defendants have damaged, and continue to damage, the State of Maryland in a

21    substantial amount to be determined at trial.

22      189.    Additionally, the State of Maryland is entitled to the maximum penalty of $10,000

23    for each and every violation alleged herein.

24

25

26

27

28

-35-

594459.1

## Count XVI

### Massachusetts False Claims Law, Mass. Gen. Laws ch. 12, §§ 5B(a)(1)–(2)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

190.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

191.    This is a claim for treble damages and penalties under the Massachusetts False Claims Law.

192.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the Commonwealth of Massachusetts for payment or approval.

193.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Commonwealth of Massachusetts to approve and pay such false and fraudulent claims.

194.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

195.    The Commonwealth of Massachusetts, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

196.    Defendants have damaged, and continue to damage, the Commonwealth of Massachusetts in a substantial amount to be determined at trial.

197.    Additionally, the Commonwealth of Massachusetts is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

1    **Count XVII**

2    **Michigan Medicaid False Claims Act, Mich. Comp. Laws §§ 400.601 *et seq.***

3    **Apria's Preferred Vendor Agreement**

4    **(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

5    198.    Relator realleges and incorporates by reference the allegations contained in

6    paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

7    199.    This is a claim for treble damages and penalties under the Michigan Medicaid

8    False Claims Act.

9    200.    Defendants knowingly presented, or caused to be presented, false or fraudulent

10   claims to the State of Michigan for payment or approval.

11   201.    Defendants knowingly made, used, or caused to be made or used false records and

12   statements, and omitted material facts, to induce the State of Michigan to approve and pay such

13   false and fraudulent claims.

14   202.    Relator cannot now identify each of the false claims for payment that Defendants

15   presented or caused to be presented, because Relator has no access to records in Defendants'

16   possession.

17   203.    The State of Michigan, unaware of the falsity of the records, statements, and

18   claims that Defendants made or caused to be made, paid and continues to pay the claims that

19   would not be paid but for Defendants' illegal conduct.

20   204.    Defendants have damaged, and continue to damage, the State of Michigan in a

21   substantial amount to be determined at trial.

22   205.    Additionally, the State of Michigan is entitled to the maximum penalty of $10,000

23   for each and every violation alleged herein.

24

25

26

27

28

594459.1

1

## Count XVIII

2

### Minnesota False Claims Act, Minn. Stat. §§ 15C.02(a)(1)–(2)

3

### Apria's Preferred Vendor Agreement

4

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

5          206.    Relator realleges and incorporates by reference the allegations contained in

6    paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

7          207.    This is a claim for treble damages and penalties under the Minnesota False Claims

8    Act.

9          208.    Defendants knowingly presented, or caused to be presented, false or fraudulent

10    claims to the State of Minnesota for payment or approval.

11          209.    Defendants knowingly made, used, or caused to be made or used false records and

12    statements, and omitted material facts, to induce the State of Minnesota to approve and pay such

13    false and fraudulent claims.

14          210.    Relator cannot now identify each of the false claims for payment that Defendants

15    presented or caused to be presented, because Relator has no access to records in Defendants'

16    possession.

17          211.    The State of Minnesota, unaware of the falsity of the records, statements, and

18    claims that Defendants made or caused to be made, paid and continues to pay the claims that

19    would not be paid but for Defendants' illegal conduct.

20          212.    Defendants have damaged, and continue to damage, the State of Minnesota in a

21    substantial amount to be determined at trial.

22          213.    Additionally, the State of Minnesota is entitled to the maximum penalty of

23    $11,000 for each and every violation alleged herein.

24

25

26

27

28

594459.1

## Count XIX

### Nevada False Claims Act, Nev. Rev. Stat. Ann. §§ 357.040(1)(a)–(b)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

214.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

215.   This is a claim for treble damages and penalties under the Nevada False Claims Act.

216.   Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Nevada for payment or approval.

217.   Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Nevada to approve and pay such false and fraudulent claims.

218.   Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

219.   The State of Nevada, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

220.   Defendants have damaged, and continue to damage, the State of Nevada in a substantial amount to be determined at trial.

221.   Additionally, the State of Nevada is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Count XX**

**New Jersey False Claims Act, N.J. Stat. §§ 2A:32C-3(a)–(b)**

**Apria's Preferred Vendor Agreement**

**(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

222.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

223.     This is a claim for treble damages and penalties under the New Jersey False Claims Act.

224.     Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of New Jersey for payment or approval.

225.     Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of New Jersey to approve and pay such false and fraudulent claims.

226.     Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

227.     The State of New Jersey, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

228.     Defendants have damaged, and continue to damage, the State of New Jersey in a substantial amount to be determined at trial.

229.     Additionally, the State of New Jersey is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

## Count XXI

### New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §§ 27-14-4(A) & (C)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

230.   Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

231.   This is a claim for treble damages and penalties under the New Mexico Medicaid False Claims Act.

232.   Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of New Mexico for payment or approval.

233.   Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of New Mexico to approve and pay such false and fraudulent claims.

234.   Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

235.   The State of New Mexico, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

236.   Defendants have damaged, and continue to damage, the State of New Mexico in a substantial amount to be determined at trial.

237.   Additionally, the State of New Mexico is entitled to the maximum penalty of $10,000 for each and every violation alleged herein.

-41-
COMPLAINT

594459.1

## Count XXII

### New York False Claims Act, N.Y. State Fin. §§ 189(1)(a)–(b)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

238.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

239.    This is a claim for treble damages and penalties under the New York False Claims Act.

240.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of New York for payment or approval.

241.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of New York to approve and pay such false and fraudulent claims.

242.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

243.    The State of New York, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

244.    Defendants have damaged, and continue to damage, the State of New York in a substantial amount to be determined at trial.

245.    Additionally, the State of New York is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

-42-

COMPLAINT

594459.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Count XXIII

### North Carolina False Claims Act, N.C. Gen. Stat. §§ 1-607(a)(1)–(2)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

246.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

247.     This is a claim for treble damages and penalties under the North Carolina False Claims Act.

248.     Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of North Carolina for payment or approval.

249.     Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of North Carolina to approve and pay such false and fraudulent claims.

250.     Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

251.     The State of North Carolina, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

252.     Defendants have damaged, and continue to damage, the State of North Carolina in a substantial amount to be determined at trial.

253.     Additionally, the State of North Carolina is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

COMPLAINT

594459.1

1

**Count XXIV**

2

**Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63 §§ 5053.1(B)(1)–(2)**

3

**Apria's Preferred Vendor Agreement**

4

**(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

5      254.    Relator realleges and incorporates by reference the allegations contained in

6   paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

7      255.    This is a claim for treble damages and penalties under the Oklahoma Medicaid

8   False Claims Act.

9      256.    Defendants knowingly presented, or caused to be presented, false or fraudulent

10  claims to the State of Oklahoma for payment or approval.

11     257.    Defendants knowingly made, used, or caused to be made or used false records and

12  statements, and omitted material facts, to induce the State of Oklahoma to approve and pay such

13  false and fraudulent claims.

14     258.    Relator cannot now identify each of the false claims for payment that Defendants

15  presented or caused to be presented, because Relator has no access to records in Defendants'

16  possession.

17     259.    The State of Oklahoma, unaware of the falsity of the records, statements, and

18  claims that Defendants made or caused to be made, paid and continues to pay the claims that

19  would not be paid but for Defendants' illegal conduct.

20     260.    Defendants have damaged, and continue to damage, the State of Oklahoma in a

21  substantial amount to be determined at trial.

22     261.    Additionally, the State of Oklahoma is entitled to the maximum penalty of

23  $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each

24  and every violation alleged herein.

25

26

27

28

-44-

COMPLAINT

594459.1

1

**Count XXV**

**Rhode Island False Claims Act, R.I. Gen. Laws §§ 9-1.1-3(a)(1)–(2)**

**Apria's Preferred Vendor Agreement**

**(Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)**

262.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

263.    This is a claim for treble damages and penalties under the Rhode Island False Claims Act.

264.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Rhode Island for payment or approval.

265.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Rhode Island to approve and pay such false and fraudulent claims.

266.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

267.    The State of Rhode Island, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

268.    Defendants have damaged, and continue to damage, the State of Rhode Island in a substantial amount to be determined at trial.

269.    Additionally, the State of Rhode Island is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

## Count XXVI

### Tennessee False Claims Act and Tennessee Medicaid False Claims Act

### Tenn. Code Ann. §§ 4-18-103(a)(1)–(2) and §§ 71-5-182(a)(1)(A)–(B)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

270.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

271.    This is a claim for treble damages and penalties under Tennessee False Claims Act and Tennessee Medicaid False Claims Act.

272.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Tennessee for payment or approval.

273.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Tennessee to approve and pay such false and fraudulent claims.

274.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

275.    The State of Tennessee, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

276.    Defendants have damaged, and continue to damage, the State of Tennessee in a substantial amount to be determined at trial.

277.    Additionally, the State of Tennessee is entitled to the maximum penalty of up to $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

1

## Count XXVII

## Texas Medicaid Fraud Prevention Law, Tex. Hum. Res. Code Ann. § 36.002

## Apria's Preferred Vendor Agreement

## (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

278.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

279.    This is a claim for treble damages and penalties under the Texas Medicaid Fraud Prevention Law.

280.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Texas for payment or approval.

281.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Texas to approve and pay such false and fraudulent claims.

282.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

283.    The State of Texas, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

284.    Defendants have damaged, and continue to damage, the State of Texas in a substantial amount to be determined at trial.

285.    Additionally, the State of Texas is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

## Count XXVIII

### Vermont False Claims Act, 32 V.S.A. § 631(a)(1)(3)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

286.  Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

287.  This is a claim for treble damages and penalties under the Vermont False Claims Act.

288.  Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Vermont for payment or approval.

289.  Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Vermont to approve and pay such false and fraudulent claims.

290.  Defendants knowingly presented, or caused to be presented, claims that included items or services resulting from violations of 42 U.S.C. § 1320a-7b.

291.  Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

292.  The State of Vermont, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

293.  Defendants have damaged, and continue to damage, the State of Vermont in a substantial amount to be determined at trial.

294.  Additionally, the State of Vermont is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

1

2

3

4

## Count XXIX

## Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.3(A)(1)–(2)

## Apria's Preferred Vendor Agreement

## (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

5      295.    Relator realleges and incorporates by reference the allegations contained in

6  paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

7      296.    This is a claim for treble damages and penalties under the Virginia Fraud Against

8  Taxpayers Act.

9      297.    Defendants knowingly presented, or caused to be presented, false or fraudulent

10  claims to the Commonwealth of Virginia for payment or approval.

11      298.    Defendants knowingly made, used, or caused to be made or used false records and

12  statements, and omitted material facts, to induce the Commonwealth of Virginia to approve and

13  pay such false and fraudulent claims.

14      299.    Relator cannot now identify each of the false claims for payment that Defendants

15  presented or caused to be presented, because Relator has no access to records in Defendants'

16  possession.

17      300.    The Commonwealth of Virginia, unaware of the falsity of the records, statements,

18  and claims that Defendants made or caused to be made, paid and continues to pay the claims that

19  would not be paid but for Defendants' illegal conduct.

20      301.    Defendants have damaged, and continue to damage, the Commonwealth of

21  Virginia in a substantial amount to be determined at trial.

22      302.    Additionally, the Commonwealth of Virginia is entitled to the maximum penalty

23  of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each

24  and every violation alleged herein.

25

26

27

28

COMPLAINT

594459.1

## Count XXX

### Washington State Medicaid Fraud False Claims Act

### Wash. Rev. Code §§ 74.66.020(1)(a)–(b)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

303.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

304.    This is a claim for treble damages and penalties under the Washington State Medicaid Fraud False Claims Act.

305.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the State of Washington for payment or approval.

306.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Washington to approve and pay such false and fraudulent claims.

307.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

308.    The State of Washington, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

309.    Defendants have damaged, and continue to damage, the State of Washington in a substantial amount to be determined at trial.

310.    Additionally, the State of Washington is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

594459.1

## Count XXXI

### District of Columbia False Claims Act, D.C. Code §§ 2-381.02(a)(1)–(2)

### Apria's Preferred Vendor Agreement

### (Against Apria Healthcare Group, Inc. and Apria Healthcare LLC)

311.    Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 52 and 62 through 67 above as though fully set forth herein.

312.    This is a claim for treble damages and penalties under the District of Columbia False Claims Act.

313.    Defendants knowingly presented, or caused to be presented, false or fraudulent claims to the District of Columbia for payment or approval.

314.    Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the District of Columbia to approve and pay such false and fraudulent claims.

315.    Relator cannot now identify each of the false claims for payment that Defendants presented or caused to be presented, because Relator has no access to records in Defendants' possession.

316.    The District of Columbia, unaware of the falsity of the records, statements, and claims that Defendants made or caused to be made, paid and continues to pay the claims that would not be paid but for Defendants' illegal conduct.

317.    Defendants have damaged, and continue to damage, the District of Columbia in a substantial amount to be determined at trial.

318.    Additionally, the District of Columbia is entitled to the maximum penalty of $22,363, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each and every violation alleged herein.

## IX.    PRAYER

WHEREFORE, Relator prays for judgment against Defendants as follows:

1.    That Defendants cease and desist from violating 31 U.S.C. §§ 3729 – 3733 and analogous provisions of the laws of the States;

594459.1

1

2.      That this Court enter judgment against Defendants in an amount equal to three

2

times the amount of damages the United States and the States have sustained because of

3

Defendants' actions, plus the maximum civil penalty permitted for each violation of the federal

4

False Claims Act and of the corresponding laws of the States;

5

3.      That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of

6

the federal False Claims Act and comparable provisions of the laws of the States;

7

4.      That Realtor be awarded all fees, costs, and expenses incurred in connection with

8

this action, including attorneys' fees, costs, and expenses; and

9

5.      That Relator recover such other relief as the Court deems just and proper.

10

**X.      DEMAND FOR JURY TRIAL**

11

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a

12

trial by jury.

13

Dated:  May 30, 2019                         Respectfully submitted,

14

15

16

17

Stephen S. Hasegawa (SBN 198472)
shasegawa@phillipsandcohen.com

18

PHILLIPS & COHEN LLP
100 The Embarcadero, Suite 300

19

San Francisco, CA 94105
Tel:  (415) 836-9000

20

Fax:  (415) 836-9001

21

John W. Tremblay (SBN 307163)
jtremblay@phillipsandcohen.com

22

PHILLIPS & COHEN LLP
2000 Massachusets Avenue, NW

23

Washington, DC 20036
Tel:  (202) 833-4567

24

Fax:  (202) 833-1815

25

Attorneys for *Qui Tam* Plaintiff

26

27

28

-52-

COMPLAINT

594459.1