# Exhibit C

### E-NETWORK DATA DELIVERY AGREEMENT – LIMITED DATA

This E-Network Data Delivery Agreement (**the "Agreement"**) is made by and between Dignity Health, a California non-profit public benefit corporation doing business as **Northridge Hospital Medical Center ("Hospital")** and **Jahandar Reza Saleh, MD, Inc. ("Healthcare Provider")**. Hospital and Healthcare Practice are sometimes referred to individually in this Agreement as a **"Party"** and, collectively, the **"Parties"**.

### RECITALS

WHEREAS, Healthcare Provider provides ambulance and emergency medical services and is a Covered Entity as defined by HIPAA, and

WHEREAS, Hospital is a health care provider that provides healthcare services, including emergency medical services and operates a private electronic network (the "e-Network") through which Hospital transmits electronic health records and other protected health information , and

WHEREAS, Hospital desires to provide PHI and other information through the e-Network about patients treated by both Hospital and Healthcare Provider for treatment purposes that Dignity Health will make available to Healthcare Provider in a limited manner pursuant to this Agreement; and

WHEREAS, Dignity Health and Healthcare Provider will each have a Treatment relationship with each individual for which Healthcare Provider may request PHI from Dignity Health through the e-Network; and

WHEREAS, Hospital and Healthcare Provider desire to enter into this Agreement for the purpose of memorializing the terms and conditions of Healthcare Provider's receipt of PHI via the e-Network operated by Hospital in a legally compliant manner pursuant to, and in accordance with, the terms and conditions contained herein, HIPAA and relevant state law.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the parties hereto agree as follows:

1. **Definitions**. All capitalized terms used in this Agreement or in any Attachment have the meaning set forth herein or in Schedule 1 to this Agreement.

2. **Terms and Conditions**. This Agreement shall be subject to those terms and conditions contained in Schedule 2 to this Agreement.

3. **Purpose of Agreement**. Hospital and Healthcare Provider each agrees that it enters into this Agreement for the purpose of facilitating Healthcare Provider's request for, and Dignity Health's provision of access to, certain Data by and through the e-Network. Each party acknowledges and agrees that for purposes of this Agreement they are each a Covered Entity as defined by HIPAA. Healthcare Provider shall receive all Data via its electronic billing system, which system shall store and distribute such information to the appropriate and authorized individuals.

4. **Data to be Provided.** Pursuant to this Agreement, Dignity Health agrees to provide access to Data that is commonly referred to as a patient's "face sheet" solely for the purpose of enabling Healthcare Provider's Payment activities. Healthcare Provider agrees to submit each request for Data in the form and format that Dignity Health requires, as Dignity Health may modify from time to time. Healthcare Provider agrees that prior to requesting Data about any individual by or through the e-Network, Provider will obtain the authorization of the individual about whom the Data pertains if such individual is able and competent to provide such authorization at the time Provider renders Treatment.

5. **Verification of Each Individual.** Healthcare Provider agrees to submit with each Data request the information that Dignity Health, in its sole discretion, requires in order for the e-Network to verify the identity of the Individual for which Healthcare Provider is requesting Data, as Dignity Health may modify from time to time

6. **Network and Data Receipt.** Healthcare Provider agrees:

1

    a. All Data provided by or through the e-Network shall occur solely for purposes permitted by state and federal law including, without limitation, HIPAA;

    b. That Hospital does not and shall not have any obligation to monitor or inspect the Data for accuracy or completeness.

7. **Network Requirements.** Healthcare Provider is solely responsible for establishing and maintaining Internet connections to enable it to receive its Data. Healthcare Provider acknowledges and agrees that the receipt of Data by or through the e-Network will not be uninterrupted or error-free, and that because of, among other reasons, hardware or software malfunctions, interruption of telecommunication services, periodic maintenance or repair procedures, and causes beyond the control of Hospital, Hospital makes no guarantee or warranty with respect to specific uptime or availability.

8. **Breach / Security Incident Notification.** In the event of a Breach or Security Incident related to the Data, Healthcare Provider shall promptly notify Hospital of such Breach or Security Incident in writing in the most expedient time possible, and not to exceed twenty-four (24) hours, following Healthcare Provider's initial awareness of such Breach or Security Incident. Notwithstanding any other notice provisions in the Agreement, notice related to any Breach or Security Incident shall be directed as follows:

| Hospital | Healthcare Provider |
|---|---|
| Dignity Health Chief Privacy and Data Security Administrator | Dr. Jahandar Saleh Jahandar Reza Saleh, MD, Inc. |
| Fax: (415) 591-6279 | Fax: (818)-678-6610 |
| Email: privacy.officer@dignityhealth.org | E-Mail: kojariani@aol.com |

In the case of notifying Hospital, Healthcare Provider shall follow the incident reporting classification and manner prescribed in Dignity Health's *Investigations, Response, and Notification of Privacy and Data Security Incidents Policy*.

9. **HIPAA Compliance.** Each of the parties shall comply with all the obligations required under HIPAA. Healthcare Provider agrees to treat all Data as PHI and to comply with all obligations, restrictions and limitations related to the possession, storage, maintenance and use of PHI including, without limitation, the implementation of administrative, physical and technical safeguards as required by HIPAA. Healthcare Provider agrees to use and disclose all Data only as permitted by HIPAA and to only authorize access to the Data by those that have a permitted purpose to access and use the Data.

10. **Disclaimer.** HEALTHCARE PROVIDER EXPRESSLY ACKNOWLEDGES AND AGREES THAT:

    a. DIGNITY HEALTH PROVIDES THE SERVICES "AS IS," WITH ALL FAULTS, WITH NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, ACCURACY OR REGULATORY COMPLIANCE.

    b. TRANSFER OF THE DATA PURSUANT TO THIS AGREEMENT WILL NOT BE UNINTERRUPTED OR ERROR FREE AND THERE MAY BE OCCASIONS WHEN HEALTHCARE PROVIDER IS UNABLE TO ACCESS OR TRANSFER DATA FROM DIGNITY HEALTH.

    c. HEALTHCARE PROVIDER ASSUMES TOTAL AND COMPLETE RESPONSIBILITY AND RISK FOR UTILIZING E-NETWORK, ACCEPTING TRANSFER OF THE DATA PURSUANT TO THIS AGREEMENT, STORING AND MAINTAINING THE DATA, AND UTILIZING THE DATA FOR ANY PURPOSE.

    d. NO ORAL OR WRITTEN INFORMATION OR ADVICE PROVIDED BY DIGNITY HEALTH, ITS EMPLOYEES, CONTRACTORS OR AUTHORIZED REPRESENTATIVES SHALL CREATE A WARRANTY NOR IN ANY WAY INCREASE THE SCOPE OF THIS WARRANTY.

11. **Limitation on Liability.** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, DIGNITY HEALTH, ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, CONTRACTORS, AND SUPPLIERS, ARE NEITHER RESPONSIBLE FOR NOR LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY, PUNITIVE, OR ANY OTHER DAMAGES (INCLUDING, WITHOUT LIMITATION, THOSE RESULTING FROM LOST PROFITS, LOST OR UNAVAILABLE DATA, OR BUSINESS INTERRUPTION) ARISING OUT OF OR RELATING IN ANY WAY TO THE SERVICES, CONTENT OR INFORMATION CONTAINED WITHIN THE DATA TRANSFERRED TO Healthcare Provider, WHETHER BASED ON WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL THEORY AND WHETHER OR NOT ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. HEALTHCARE PROVIDER'S SOLE REMEDY FOR BREACH OF THIS AGREEMENT BY DIGNITY HEALTH OR DISSATISFACTION WITH DIGNITY HEALTH FOR ANY REASON IS TO STOP ACCESSING AND TRANSFERRING THE DATA.

12. **Notices.** Any notice or other communication required by this Agreement to be in writing; sent to the address listed below; and shall be deemed given when delivered by a national delivery service that provides confirmation of delivery:.

**If to Hospital:**
Saliba Salo, President

Northridge Hospital Medical Center
18300 Roscoe Blvd
Northridge, CA 91328
**With a copy to:**
Vice President & Assoc. General Counsel
Legal Department
3200 N Central Avenue, Ste., 2300
Phoenix, AZ 85012

**If to Healthcare Provider:**
Dr. Jahandar Saleh, Practice Owner
Jahandar Reza Saleh, MD, Inc.
18350 Roscoe Blvd, Suite 400
Northridge, CA 91325

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date fully executed below.

| DIGNITY HEALTH | JAHANDAR REZA SALEH, MD |
|---|---|
| Signature: _Saliba Salo_ | Signature: _[signature]_ MD |
| Name: | Name: _Jahandar R. Saleh, M.D._ |
| Title: | Title: _M.D._ |
| Date: _1/23/17_ | Date: _1-23-2017_ |

3

### Schedule 1 - Definition

1. **"Breach"** shall mean the unlawful or unauthorized access to, viewing, acquisition, use or disclosure of PHI.
2. **"Data"** shall mean the PHI and other information related to individuals treated by Healthcare Provider which for purposes of this Agreement will be limited to admission, discharge and transfer (ADT) information provided for Payment purposes.
3. **"EMR"** shall mean electronic medical records.
4. **"HIPAA"** shall mean the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191, Title XIII of the American Recovery and Reinvestment Act of 2009, Public Law 111-004, and regulations promulgated thereunder by the U. S. Department of Health & Human Services, as amended from time to time.
5. **"Payment"** has the meaning assigned to it under the Privacy Rule (see 45 CFR 164.501), which is defined as "the activities undertaken by a health care provider to obtain reimbursement for the provision of health care."
6. **"Protected Health Information"** ("PHI") shall have the meaning given to such term under the Privacy Rule.
7. **"Security Incident"** shall mean any accidental, malicious or natural act that:
    a. Results in a Breach of any data;
    b. Adversely impacts the functionality of either party's network;
    c. Permits unauthorized access to either party's network;
    d. Impacts the integrity of either party's files or databases including, but not limited to:
        i. Interface failures;
        ii. Inadequate testing or change control procedures;
        iii. Other failures which result in the deletion or unauthorized changes to an electronic database.
    e. Involves the loss or loss of control of an information technology resourced owned or managed by either party; or
    f. Involves the use of a technology resource owned by either party for illegal purposes or to launch attacks against other individuals or organizations.
8. **"Treatment"** has the meaning assigned to it under the Privacy Rule (see 45 CFR 164.501), which is defined as: "the provision, coordination, or management of health care and related services by one or more health care Healthcare Providers, including the coordination of management of health care by a health care Healthcare Provider with a third party; consultation between health care Healthcare Providers relating to a patient; or the referral of a patient for health care from one health care Healthcare Provider to another."

4

## Schedule 2 – Terms and Conditions

1. **Compliance with Laws.** Each of the Parties will comply with all laws, ordinances, rules, regulations and accrediting agency standards (including but not limited to The Joint Commission Accreditation standards) which are applicable to its performance under this Agreement. Healthcare Provider and Hospital agree to amend this Agreement from time to time to the extent necessary to allow the Parties to comply with HIPAA and any HIPAA implementing regulations promulgated by the Secretary or other regulations or statutes.

2. **Referrals not required.** Healthcare Provider may refer patients to any hospital or health care facility or healthcare practitioner deemed by Healthcare Provider best qualified to deliver medical services to a Healthcare Provider's patients. Nothing in this Agreement or in any written or oral agreement between Hospital and Healthcare Provider contemplates or requires the admission or referral of any patients or business by either Party.

3. **Master List.** Dignity Health and Healthcare Provider acknowledge that this Agreement, together with any other contracts between Dignity Health and Healthcare Provider, will be included on the master list of physician contracts maintained by Dignity Health.

4. **Compliance with Hospital Rules.** Healthcare Provider shall comply with all policies, procedures, and rules applicable to this Agreement, and any other policies, procedures and rules relating to the privacy or security of Data and the technology used to receive, transmit or exchange Data, in each case as may be adopted or amended by Hospital from time to time.

5. **Indemnity.** Healthcare Provider shall promptly and fully defend, indemnify and hold harmless Hospital, its affiliates and respective officers, directors, agents, employees and contractors from and against all claims, demands, judgments, fines, penalties and regulatory enforcement actions alleged, made or recovered against them for any and all damages relating to, or arising out of (1) this Agreement; (2) the access, use, utilization, storage or maintenance of any Data; (3) the development, installation or use of any Software (if any); (4) any Breach, Security Incident, or other breach of confidentiality of the Data; (5) breach of its obligations related to Hospital's confidential information; and (6) breach by Healthcare Provider of any other responsibility, obligation representation or warranty pursuant to this Agreement.

6. **Governance; Forum.** This Agreement shall be governed and interpreted and enforced in accordance with the laws of the State of California. Each Party agrees that the courts located in San Francisco, California will constitute the sole and exclusive forum for the resolution of any and all disputes arising out of or in connection with this Agreement and Healthcare Provider hereby irrevocable consents to the personal jurisdiction and venue of such courts and irrevocably waives any objections thereto. Notwithstanding anything in this Agreement, Hospital may, at any time seek injunctive relief to enforce its rights under this Agreement in any court of competent jurisdiction.

7. **Assignment.** Healthcare Provider may not assign, sublicense or delegate this Agreement without the prior written consent of Hospital, at Hospital's sole discretion. Any such purported assignment, sublicense or delegation without such consent shall be void.

8. **No Third Party Beneficiary.** The provisions and covenants set forth in this Agreement are expressly entered into only by and between the Parties, and are only for their benefit. Neither Party intends to create or establish any third Party beneficiary status or right (or the equivalent thereof) in any other third Party and no such third Party shall have any right to enforce or enjoy any benefit created or established by the provisions and covenants in this Agreement.

9. **Relationship of Parties.** Each Party is a legally distinct entity, separate from the other Party and nothing herein shall create any partnership, joint venture, merger or other relationship by or between the partners other than as specifically stated herein. Nothing contained in this Agreement shall authorize or deem any Party as partner, employee or agent of any other Party in any manner; authorize or deem one Party to assume, establish or create any obligation or responsibility whatsoever, express or implied, on behalf of or in the name of any other Party; or authorize or empower a Party to bind any other Party in any manner or make any representation, warranty, covenant, agreement, or commitment on behalf of any other Party.

10. **Waiver.** No delay or omission by a Party hereto to exercise any right occurring upon any noncompliance or default by another Party with respect to any of the terms of this Agreement will impair any such right or power or be construed to be a waiver thereof. A waiver by one of the Parties hereto of any of the covenants, conditions or agreements to be performed by one of the other Parties will not be construed to be a waiver of any succeeding breach thereof or of any covenant, condition or agreement herein contained.

11. **Confidentiality**.

    a. Each Party may provide information that is confidential (**"Confidential Information"**) to the other Party. The Confidential Information of a disclosing Party shall include, but not be limited to contractual, technical, patient-related data, personal information, concepts, ideas, research, engineering methods, systems, program design, technical dat and which were not previously published or disclosed to the general public or not previously available without restrictions to the receiving Party and which the disclosing Party desires to protect against unrestricted disclosure or competitive use.

    b. Other than patient-related data and personal information, Confidential Information shall not include information which: (i) is or becomes part of the public domain through no act or omission of the receiving Party; (ii) was in the receiving Party's lawful possession prior to the disclosure and had not been obtained by the receiving Party either directly or indirectly from the disclosing Party; (iii) is lawfully disclosed to the receiving Party by a third Party without restriction on disclosure; (iv) is independently developed by the receiving Party; or (v) is disclosed by operation of law. The receiving Party shall be entitled to disclose Confidential Information to the extent required by law or judicial order, provided that prior written notice of such required disclosure is furnished to the disclosing Party as soon as practicable in order to afford the disclosing Party an opportunity to seek a protective order.

    c. If either Party receives Confidential Information from the other Party, except as expressly specified in this Agreement, the receiving Party shall: (i) maintain in strictest confidence such Confidential Information; (ii) not disclose any such Confidential Information to any person outside the receiving Party's business organization and only disclose or permit the use of the disclosing Party's Confidential Information on a need to know basis; and (iii) return such Confidential Information to the disclosing Party upon the expiration or termination of this Agreement.

    d. A receiving Party who becomes aware of its unauthorized use or disclosure shall promptly and fully notify the disclosing Party of all facts known to it concerning such unauthorized use or disclosure. A Party in breach of this confidentiality section grants the other Party the right to immediately terminate this Agreement upon written notice of intent to terminate. in the event of breach of this confidentiality section, the disclosing Party shall be entitled to equitable remedies, including injunctive relief, in addition to any other remedies that may be available. This confidentiality section, shall survive the expiration or termination of this Agreement for a period of seven (7) years, except the obligation of confidentiality with respect to patient-identifiable data and personal information shall be perpetual.

12. **Corporate Integrity Program.** Healthcare Provider acknowledges that Hospital operates under a compliance program known as the Corporate Integrity Program of Dignity Health. Healthcare Provider further acknowledges that notwithstanding anything contained herein, Hospital and its Affiliates shall not be required to engage in any conduct that may violate any policies, procedures, or directives of the Corporate Integrity Program of Dignity Health.

13. **Force Majeure**. Hospital shall not be liable to Healthcare Provider under this Agreement for any delay or failure to perform any obligation pursuant to this Agreement if such delay or failure arises from any cause(s) beyond Hospital's control including, by way of example, labor disputes, strikes, floods, fire, lightning, utility or communications failures, earthquakes, vandalism, war, acts of terrorism.

14. **Conflicting Provisions.** This Agreement, including each schedule, and document attached hereto, are intended to be read and construed in harmony with each other. In the event any provision in any other documents conflicts with the provisions of this Agreement, the body of this Agreement shall control, and such conflicting provision shall be deemed removed and replaced with the governing provision herein.

6

15. **Amendment: Entire Agreement.** No amendment or modification of this Agreement will be effective unless in a subsequent writing signed by both Parties. This Agreement sets forth the complete, exclusive and final statement of the agreement between the Parties as to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, whether oral or written, between the Parties regarding such subject matter hereof..